UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LISA KAYE PATTERSON,

                Plaintiff,

      v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

CASE NO. C17-5581-RSL

**ORDER AFFIRMING THE
COMMISSIONER AND
DISMISSING THE CASE**

       Plaintiff Lisa Kaye Patterson seeks review of the denial of her application for Disability

Insurance Benefits. She contends the administrative law judge ("ALJ") erred in (1) failing to

consider whether her fibromyalgia satisfied any listings at step three; (2) discounting her

subjective testimony; (3) discounting certain medical evidence; (4) discounting lay statements;

(5) assessing her residual functional capacity ("RFC"); and (6) finding that she could perform her

past work as well as other jobs existing in significant numbers in the national economy. Dkt. 7 at

1-2. For the reasons below, the Court **AFFIRMS** the Commissioner's final decision and

**DISMISSES** the case with prejudice.

## BACKGROUND

       Ms. Patterson is currently 58 years old, has a 10th-grade education and a GED, and has

worked as a teacher's aide. Tr. 54-55, 78. In October 2013, she applied for benefits, alleging

disability as of June 1, 2002, with a date last insured ("DLI") of March 31, 2009. Tr. 155-56, 167. Her application was denied initially and on reconsideration. Tr. 104-06, 108-09. The ALJ conducted a hearing on October 6, 2015 (Tr. 40-91), and subsequently issued a decision finding Ms. Patterson not disabled. Tr. 22-34. The Appeals Council denied Ms. Patterson's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Ms. Patterson did not engage in substantial gainful activity between her alleged onset date and her date last insured ("DLI").

**Step two:** Through the DLI, Ms. Patterson's degenerative disc disease of the lumbar spine and fibromyalgia were severe impairments.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2]

**RFC:** Through the DLI, Ms. Patterson could perform light work with additional limitations: she must be allowed to sit or stand as needed. She could occasionally stoop and crouch sufficiently to get in and out of a chair. She could not climb ladders, ropes, or scaffolds. She could not balance, kneel, or crawl. She could occasionally climb ramps or stairs. She should avoid even moderate exposure to extreme heat or cold, vibration, and hazards.

**Step four:** Through the DLI, Ms. Patterson could perform her past work as a teacher's aide.

**Step five:** In the alternative, as there are jobs that exist in significant numbers in the national economy that Ms. Patterson could perform before the DLI, she is not disabled.

Tr. 22-34.

//

//

//

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING
THE CASE- 2

**DISCUSSION**

**A.     Step Three - Fibromyalgia**

The ALJ found Ms. Patterson's fibromyalgia was a severe impairment at step two.  Tr. 24.  The ALJ noted at step three there is no listing for fibromyalgia, but that he considered similar listings and found Ms. Patterson did not meet or equal any listings regarding musculoskeletal disorders, neurological disorders, or immune system disorders.  Tr. 26.  Under Social Security Ruling ("SSR") 12–2p, once a claimant is determined to have a medically determinable impairment of fibromyalgia, the ALJ must consider whether it "meets or medically equals the criteria of any of the listings in the Listing of Impairments." SSR 12–2p, 2013 WL 3104869 at *6.  Because fibromyalgia is not a listed impairment, the ALJ must "determine whether [it] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment." *Id*.

At step three, the ALJ considers whether one or more of a claimant's impairments meet or medically equal an impairment listed in Appendix 1 to Subpart P of the regulations.  "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original; citations omitted). The claimant bears the burden of proof at step three.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  A mere diagnosis does not suffice to establish disability.  *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).  To meet a listing, an impairment "must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).  "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least

equal in severity and duration' to the characteristics of a relevant listed impairment[.]" *Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999); § 416.926 (a). *See also Sullivan*, 493 U.S. at 531 (to establish equivalency, claimant "must present medical findings equal in severity to *all* the criteria" for the listing).

Ms. Patterson argues the ALJ erred in failing to consider the impact of fibromyalgia at step three: "other than mentioning fibromyalgia at step 2, it never shows up again in the decision, almost like it was forgotten, despite that this is a painful condition." Dkt. 7 at 11. This argument overlooks that the ALJ expressly addressed Ms. Patterson's fibromyalgia at step three and indicated that it did not satisfy any listings. The Commissioner noted the plain language of the ALJ decision and that Ms. Patterson has not indicated which analogous listing she believed she should have been found to have met. Dkt. 8 at 4. In reply, Ms. Patterson takes issue with the "cursory" nature of the ALJ's discussion of her fibromyalgia, but fails to cite to any evidence showing that she, in fact, meets or equals all of the requirements of Listing 1.04 or any other listing. Dkt. 9 at 2 (citing Tr. 358, 403). Ms. Patterson has not met her burden to show error in the ALJ's step-three findings regarding fibromyalgia.

**B.    Ms. Patterson's Testimony**

The ALJ found Ms. Patterson's testimony about her limitations was inconsistent with the medical record, inconsistent with her activities, and inconsistent with her reports of improvement with treatment. Tr. 27-30. Ms. Patterson argues the ALJ's reasons are not clear and convincing, as required in the Ninth Circuit. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Ms. Patterson argues that the ALJ may not rely solely on medical records to find that the claimant is more functional than she claimed to be. Dkt. 7 at 7. This approach is not erroneous, as the ALJ specifically found Ms. Patterson's testimony was inconsistent with the medical

records. Ms. Patterson contends the ALJ "played doctor," but an ALJ does not err in considering whether the medical evidence corroborates or contradicts a claimant's testimony. *See, e.g.*, *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Ms. Patterson argues further that the ALJ identified no activities that show she can perform a job at the light exertional level, but also cites no authority requiring an ALJ to do so. Dkt. 7 at 8. The ALJ cited evidence of Ms. Patterson's activities as evidence that her activities contradicted her allegations, which is a proper reliance on activities. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills"). The ALJ noted, for example, that Ms. Patterson reported to providers she traveled and engaged in daily exercise, which the ALJ contrasted with her allegations of being bedridden. Tr. 27-29.

Ms. Patterson also emphasizes she was prescribed pain medication and provided with off-work slips by her providers, who would not provide these to her if she did not need them. Dkt. 7 at 9. The argument regarding pain medication does not address the evidence cited by the ALJ, showing that Ms. Patterson reported that medication and other conservative treatment helped manage her pain. Tr. 27-30. The use of pain medication in itself does not establish that Ms. Patterson was unable to work, and neither do the off-work slips, because, as found by the ALJ, the clinicians did not cite any objective basis for opining that Ms. Patterson was unable to work,

and, in some instances, explicitly cited Ms. Patterson's own request for excused absences as the basis for the off-work slip. Tr. 27-28, 384, 390. Although Ms. Patterson suggests she would not have requested excused absences if she had been able to work, because she did not get paid when she was absent from work (Dkt. 7 at 9), this argument only establishes that Ms. Patterson had a financial disincentive to be absent, but not that she was actually physically unable to work when she was absent.

Because the ALJ provided legally sufficient reasons to discount Ms. Patterson's allegations, the Court affirms the ALJ's assessment of her testimony.

## C.    Medical Opinions

Ms. Patterson's opening brief mentions two medical opinions: a treating clinician's off-work slips, and the opinion of a non-examining State agency reviewing consultant. Dkt. 7 at 11-12. With respect to the off-work slips, Ms. Patterson argues the ALJ did not cite any evidence showing that, contrary to the clinician's indication, she actually could work at the time she was excused from work. Dkt. 7 at 12. Ms. Patterson also notes the ALJ rejected the opinion of the State agency consultant (Tr. 30), but does not explain if or how any error resulted from such a finding. *Id.* In light of Ms. Patterson's failure to develop any argument regarding the State agency opinion, the Court need not address that opinion further. *See Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue); *see also Independent Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).

With respect to the off-work slips, Ms. Patterson argues the ALJ failed to cite evidence contradicting the off-work slips. Dkt. 7 at 12. To the contrary, the ALJ explained that he found the off-work slips to be based on Ms. Patterson's subjective complaints of an inability to work

and inconsistent with the remaining record evidence. Tr. 27-30. As explained *supra*, the ALJ's reasoning is legally sufficient and supported by substantial evidence. Accordingly, the ALJ did not err in discounting the off-work slips. *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("As the district court noted, however, the treating physician's prescribed work restrictions were based on Bray's subjective characterization of her symptoms. As the ALJ determined that Bray's description of her limitations was not entirely credible, it is reasonable to discount a physician's prescription that was based on those less than credible statements.").

**D.    Lay Evidence**

The ALJ summarized statements written by Ms. Patterson's family members: her daughter-in-law, son, and husband. Tr. 31 (referencing Tr. 317, 320, 323-35). The ALJ found these statements to be inconsistent with Ms. Patterson's reports to medical providers and the clinical observations of her during appointments, as well as with Ms. Patterson's activities. Tr. 31. The ALJ also found Ms. Patterson's son's statement was inconsistent with evidence that her symptoms improved with medication; her son contended that it was hard for his mother to find relief from her symptoms. Tr. 31, 320.

Inconsistency between a lay statement and medical evidence is a germane, legally sufficient reason to discount a lay statement. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Inconsistency between a lay statement and a claimant's activities is also a germane reason to discount a lay statement. *See Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001). The ALJ's reasons are supported by substantial evidence because the ALJ cited evidence contradicting the family members' descriptions of Ms. Patterson writhing in agony and being essentially bedridden. Tr. 31. Although Ms. Patterson theorizes there are facts that could

harmonize the family members' descriptions with the medical evidence and the evidence of her activities, her alternative interpretation of the evidence does not establish that the ALJ's interpretation was unreasonable and therefore erroneous. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld. In reaching his findings, the law judge is entitled to draw inferences logically flowing from the evidence."). The ALJ's assessment of the lay statements is therefore affirmed.

**E.     RFC Assessment**

Ms. Patterson argues there is no evidence in the record showing she can perform the full range of light work, as defined in the Commissioner's regulations, or that she could work a full-time schedule on a regular and continuing basis. Dkt. 7 at 12-13.

An RFC assessment need not correspond to a particular medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ is tasked with translating the medical evidence into "a succinct RFC," and Ms. Patterson's bald assertions do not establish that the ALJ erred in formulating the RFC assessment in this case. *Rounds v. Comm'r of Social Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

To the extent that Ms. Patterson cites her work history (namely, her absenteeism) as evidence that she cannot work, the ALJ explained why he discounted her reports of an inability to work at her prior job. Tr. 27-28. As explained *supra*, the ALJ's reasoning was legally sufficient and supported by substantial evidence. This evidence therefore does not support Ms. Patterson's assertion of error in the ALJ's RFC assessment.

**F.      Steps Four and Five**

Ms. Patterson argues the ALJ erred at steps four and five.  Dkt. 7 at 14-15.  At step four, an ALJ considers whether a claimant can perform her past relevant work.  The claimant bears the burden of showing she can no longer perform her past relevant work.  20 C.F.R. §§ 404.1512(a), 404.1520(f).

At step four, the ALJ found Ms. Patterson capable of performing her past work as a teacher aide II, as the job was actually performed and as it is generally performed per the Dictionary of Occupational Titles ("DOT").  The ALJ's decision parrots the vocational expert's ("VE") testimony and cites the incorrect DOT number for this job — one digit of the 10-digit job number is incorrect.  *See* Tr. 32, 78; 1991 WL 672337 (the DOT description of the teacher aide II job).  The VE referred to a job title that matched the description of Ms. Patterson's former work and the ALJ referred to that same job title.  *See id.*  This type of scrivener's error does not constitute reversible error.  *See, e.g.*, *Nelson v. Colvin*, 2015 WL 4747317, at *6 (C.D. Cal. Aug. 1, 2015) (finding that an ALJ's reference to the wrong DOT number pertaining to a claimant's past relevant work was an "obvious scrivener's error" that "was inconsequential the ALJ's non-disability determination at Step Four").

The VE's testimony, however, arguably undercuts the ALJ's finding that Ms. Patterson was capable of performing her past work as generally performed, because the VE opined that teacher aides typically use computers, but Ms. Patterson testified that she never used a computer in her work as a teacher aide and did not know how.  Tr. 83-84.  The VE indicated that in light of this testimony, Ms. Patterson did not have any transferable skills and was not able to perform a semiskilled job requiring the use of computers.  *Id.*  This testimony suggests Ms. Patterson would

not be able to perform the job of teacher aide as generally performed, because the VE indicated the job generally required the use of computers.

That does not suggest that Ms. Patterson could not perform the job of teacher aide as she actually performed it, however, and a claimant's ability to perform a past job as actually performed supports an ALJ's non-disability determination at step four. *See* Social Security Ruling ("SSR") 82-61, 1982 WL 31387, at *1-2 (Jan. 1, 1982). Ms. Patterson's reply brief focuses on whether absenteeism would prevent her from performing this job, but, as discussed *supra*, the ALJ did not credit her testimony regarding her absenteeism and instead explicitly found it to be not reliable. Tr. 27. Because the ALJ found Ms. Patterson's allegations of absenteeism to be inconsistent with other evidence in the record, the ALJ did not need to account for absenteeism in the RFC assessment or subsequent steps in the disability determination. *See Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015).

Because Ms. Patterson has not shown the ALJ erred in finding that she could perform her former job as actually performed, the ALJ's proper step-four finding eliminates the need to consider whether the ALJ's alternative step-five findings contain error, because any error would be harmless. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

//

//

//

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE CASE- 10

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 24th day of April, 2018.

*Robert S. Lasnik*

Robert S. Lasnik
United States District Judge